UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDRES MIJARES-ORTEGA, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>NEW ORIENTAL EDUCATION & TECHNOLOGY GROUP INC., CHENGGANG ZHOU, MICHAEL MINHONG YU, and ZHIHUI YANG,<br><br>                    Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Andres Mijares-Ortega ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of United States ("U.S.") Securities and Exchange Commission ("SEC") filings of New Oriental Education & Technology Group Inc. ("New Oriental" or the "Company"), the Company's press releases, and analyst reports, media reports, and other publicly disclosed reports and information about the Company.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all persons who purchased New Oriental American Depository Shares ("ADSs") between April 24, 2018 and July 22, 2021, both

dates inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") against New Oriental and certain of the Company's senior officers and directors.

2.      New Oriental provides educational programs, services, and products to students across the People's Republic of China ("China" or the "PRC") and delivers online courses through its online learning platforms.  In the early 2000s, the Company entered the K-12 after-school tutoring sector.  Moreover, in 2005, New Oriental commenced its online education services through its Koolearn platform.  The Company now provides comprehensive online education services through its subsidiary, Koolearn Technology Holding Limited.

3.      In February 2018, the Chinese government released a set of regulations aimed at reining in excessive tutoring fees and limiting the perceived societal harm resulting from the ubiquity of for-profit tutoring programs such as those offered by New Oriental.  Among other changes, the regulations prohibited after-school tutoring institutions from providing courses more advanced than the syllabus and curricula applicable to the respective primary and secondary school students, providing courses designed to enhance exam-taking skills, and linking school enrollment with tutoring results.  Overall, the regulations were aimed at reducing disparities in school performance between relatively affluent students able to afford after-school tutoring and those that could not.

4.      Because New Oriental operates in a highly regulated industry within China, the impact of new laws and regulations impacting the Chinese tutoring industry and the Company's compliance with the Chinese regulatory framework and government prerogatives are of material importance to investors.  In fact, New Oriental acknowledged the material importance of maintaining strict compliance with Chinese laws, regulations, and government prerogatives.  In

New Oriental's Form 20-F filed with the SEC on September 16, 2020, New Oriental stated that the Company was "continuously making efforts to comply with the requirements under these regulations and implementations" governing after-school tutoring businesses imposed by the Chinese government, and any failure to do so could "materially and adversely affect [New Oriental's] business and results of operations."

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) New Oriental's revenue and operational growth was the result of deceptive marketing tactics and abusive business practices that flouted Chinese regulations and policies and exposed the Company to an extreme risk that more draconian measures would be imposed on the Company; (ii) New Oriental had engaged in misleading and fraudulent advertising practices, including the provision of false and misleading discount information designed to obfuscate the true cost of the Company's programs to its customers; (iii) New Oriental had falsified teacher qualifications and experience in order to attract customers and increase student enrollments; (iv) New Oriental had defied prior government warnings against linking school enrollments with the provision of private tutoring services; (v) as a result of the foregoing, New Oriental was subject to an extreme undisclosed risk of adverse enforcement actions, regulatory fines and penalties, and the imposition of new rules and regulations adverse to the Company's business and interests; (vi) the new rules, regulations, and policies to be implemented by the Chinese government following China's annual "Two Sessions" parliamentary meetings were far more severe than represented to investors by Defendants and in fact posed an existential threat to the Company and its business; and (vii) as a

result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and lacked a reasonable factual basis.

6.      On April 25, 2021, media reports revealed that the City of Beijing had fined four online education agencies, including the New Oriental subsidiary Koolearn, the maximum fine of 500,000 yuan (approximately $80,000) each for misleading customers with false advertising regarding course pricing.

7.      On May 12, 2021, news reports revealed that an impending crackdown by the Chinese government on the private tutoring sector would be further reaching and more drastic than previously publicly known, including that regulators had already taken adverse actions against New Oriental and other for-profit tutoring companies.

8.      On this news, New Oriental's American Depository Share ("ADS") price fell $2.77 per ADS, or 19.4%, over the following two trading sessions to close at $11.51 per ADS on May 13, 2021.

9.      On June 1, 2021, Chinese regulators announced that they had fined fifteen off-campus training institutions, including New Oriental, for illegal activities such as false advertising and fraud.

10.     On this news, New Oriental's ADS price fell $1.77 per ADS, or 16%, over the following two trading sessions to close at $9.32 per ADS on June 3, 2021.

11.     Then, on July 23, 2021, China unveiled a sweeping overhaul of its education sector, banning companies that teach the school curriculum from making profits, raising capital, or going public, effectively ending any potential growth in the for-profit tutoring sector in China.

12.     On July 25, 2021, New Oriental published an "update" on the new regulations, which stated that the Company will "comply with relevant rules and regulations when providing

educational services" and "expects such measures to have material adverse impact on its after-school tutoring services related to academic subjects in China's compulsory education system."

13.     On this news, New Oriental's ADS price fell $4.46 per ADS, or nearly 70%, over the following two trading sessions to close at $1.94 per ADS on July 26, 2021.

14.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

15.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act.  New Oriental ADSs trade on the New York Stock Exchange ("NYSE"), located within this District, New Oriental ADSs were sold to investors residing in this District, and Defendants disseminated materially false and misleading statements into this District, as detailed herein.

17.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

18.     Plaintiff, as set forth in the certification attached hereto and incorporated by reference herein, purchased New Oriental ADSs during the Class Period and suffered damages as a result.

19.     Defendant New Oriental is a Cayman Islands corporation headquartered in Beijing, China.  New Oriental provides private educational and tutoring services in China.  New Oriental ADSs trade on the NYSE under the ticker symbol "EDU."  Each ADS represents one share of New Oriental common stock.

20.     Defendant Chenggang Zhou ("Zhou") was the Chief Executive Officer ("CEO") and a director of New Oriental during the Class Period.

21.     Defendant Michael Minhong Yu ("Yu") is the founder of New Oriental and, during the Class Period, the Chairman of the Board of Directors.  Defendant Yu previously served as CEO of New Oriental from 2001 to September 2016.  He has been called the "Godfather of English Training" and "the richest teacher in China" for his central role in growing for-profit tutoring services in the country through New Oriental.

22.     Defendant Zhihui Yang ("Yang") was the Chief Financial Officer of New Oriental during the Class Period.  He was also named Executive Vice President of the Company on January 15, 2021.

23.     Defendants Zhou, Yu, and Yang are collectively referred to herein as the "Individual Defendants."

24.     New Oriental and the Individual Defendants are collectively referred to herein as "Defendants."

25.     Each of the Individual Defendants was directly involved in the management and day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, services, competition, acquisition plans, and present and future business prospects, as alleged herein. In addition, the Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware of, or recklessly disregarded, the false and misleading statements being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

26.     As officers and controlling persons of a publicly held company whose securities are registered with the SEC pursuant to the Exchange Act and trade on the NYSE, which is governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's operations, business, services, markets, competition, acquisition plans, and present and future business prospects. In addition, the Individual Defendants each had a duty to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded common shares would be based upon truthful and accurate information. Defendants' false and misleading misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

27.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to, and did, control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading before or shortly after their issuance, participated in conference calls with investors

during which false and misleading statements were made, and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each Individual Defendant is responsible for the accuracy of the public statements detailed herein and is, therefore, primarily liable for the representations contained therein.

## SUBSTANTIVE ALLEGATIONS

### Background

28.   New Oriental provides educational programs, services, and products to students across China and delivers online courses through its online learning platforms. Although headquartered in Beijing, China, the Company is organized as an offshore holding company domiciled in the Cayman Islands.

29.   Defendant Yu founded New Oriental in 1993. Yu is a member of the National People's Congress. He also serves as vice chairman of the Committee of Education of the Central Committee of the China Democratic League. The China Democratic League, one of eight non-communist parties in China, mainly consists of intellectuals working in the fields of culture, education, science, and technology. As a member of the National People's Congress, Defendant Yu is able to participate in the country's top-level legislative affairs or political consultations and was directly involved in the development of laws and regulations impacting the private tutoring industry in China and was privy to non-public information regarding these developments.

30.   New Oriental delivers its educational programs, services, and products to students across China through its network of schools, learning centers and bookstores, as well as pure-play online learning platforms. As of September 24, 2021, New Oriental had a physical network of more than 120 schools and 1,500 learning centers in over 100 cities and approximately 54,200 teachers. The Company also delivers online courses through online learning platforms.

31.     In the early 2000s, New Oriental entered the K-12 after-school tutoring sector by offering courses in the New Oriental Primary and Secondary School All Subjects Program, which covered all academic subjects for kindergarten and primary school students, as well as middle and high school students.  This program was formerly known as the "Pop Kids All Subjects" program for kindergarten and primary school students and the "New Oriental U-Can All Subjects" program for middle and high school students.

32.     In 2005, New Oriental commenced its online education services through its Koolearn platform.  The Company now provides comprehensive online education services through its subsidiary, Koolearn Technology Holding Limited.  New Oriental offers online education courses in three core categories: (i) college education; (ii) K-12 education; and (iii) pre-school education.  In 2015, New Oriental launched a K-12 course through the Koolearn platform comprised of after-school tutoring courses which cover the majority of standard school subjects from primary to high school in China, test preparation courses designed for standardized college, and high school entrance exams.

33.     For the year ended May 31, 2021, according to New Oriental's Form 20-F filed with the SEC on September 24, 2021, New Oriental's total net revenue was $4.3 billion.  The vast majority of this revenue (86%) was attributed to K-12 after-school tutoring, test preparation and other courses, while 5% was attributed to online education products and services, and 9% was attributable to books and other services.

34.     In February 2018, the Chinese government released a set of regulations aimed at reining in excessive tutoring fees and limiting the perceived societal harm resulting from the ubiquity of for-profit tutoring programs such as those offered by New Oriental.  Among other changes, the regulations prohibited after-school tutoring institutions from providing courses more

advanced than the syllabus and curricula applicable to the respective primary and secondary school students, providing courses designed to enhance exam-taking skills, and linking school enrollment with tutoring results.   Overall, the regulations were aimed at reducing disparities in school performance between relatively affluent students able to afford after-school tutoring and those that could not.

35.    Because New Oriental operates in a highly regulated industry within China, the impact of new laws and regulations impacting the Chinese tutoring industry and the Company's compliance with the Chinese regulatory framework and government prerogatives are of material importance to investors.   In fact, New Oriental acknowledged the material importance of maintaining strict compliance with Chinese laws, regulations, and government prerogatives.   In New Oriental's Form 20-F filed with the SEC on September 16, 2020, New Oriental stated that the Company was "continuously making efforts to comply with the requirements under these regulations and implementations" governing after-school tutoring businesses imposed by the Chinese government, and any failure to do so could "materially and adversely affect [New Oriental's] business and results of operations."

36.    Despite Defendants' acknowledgment that it was of material importance to investors that New Oriental comply with the rules, regulations, and proscriptions of the Chinese government, during the Class Period the Company routinely engaged in illicit business practices designed to artificially inflate the Company's financial results.   For example, the Company employed deceptive marketing tactics, such as systematically falsifying teacher qualifications and misrepresenting program costs to consumers, and abused its market dominance, exposing the Company to an extreme undisclosed risk of adverse governmental action, as well as immense legal, regulatory, and reputational fallout if New Oriental's illicit business practices were ever publicly

revealed.  Defendants engaged in a fraudulent scheme to conceal the Company's true business practices, and later an impending government crackdown on the industry, falsely claiming that New Oriental maintained industry-leading compliance with applicable rules and regulations governing the Chinese for-profit tutoring industry and that, because of this purported compliance, the Company would in fact ***benefit*** from existing and anticipated governmental actions.  As a result of Defendants' scheme to defraud investors, and materially false and misleading statements during the Class Period, the price of New Oriental ADSs traded at artificially inflated prices.

### Materially False and Misleading Statements Issued During the Class Period

37.     The Class Period begins on April 24, 2018.  On that date, New Oriental issued a release announcing the Company's financial results for the third quarter of 2018 ended February 28, 2018.[1]  The release stated that New Oriental had achieved total net revenue for the quarter of $618.1 million, a 41.2% year-over-year increase.  The release also stated that during the quarter New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 7.7% year-over-year, to approximately 861,000 students. In the release, Defendant Yu stated that "[o]ur K-12 all-subjects after-school tutoring business accelerated its growth momentum in the third quarter, leading to a significant year-over-year revenue increase of 51%."

38.     That same day, New Oriental held an earnings call with analysts and investors hosted by Defendant Yang.  Defendant Yang asserted that, "***[a]s a public company, New Oriental, we do comply with the government regulations***."   During the call, Defendant Yang further represented that, if anything, "actions taken by the government are ***neutral to positive*** side to New

---

[1] New Oriental's fiscal year ends May 31st of the calendar year.

Oriental because I think it's a great opportunity for us to consolidate the market and to take more market share from the competitors."

39.     On July 24, 2018, New Oriental issued a release announcing the Company's financial results for the fourth quarter and fiscal year ended May 31, 2018.  The release stated that the Company had achieved total net revenue for the quarter of $701 million, a 44.1% year-over-year increase.   The release also stated that during the quarter New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 44.9% year-over-year, to approximately 2.1 million students.  For the fiscal year, the release stated that New Oriental had achieved total net revenue of $2.4 million, a 36% year-over-year increase.  The release also stated that during the year New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 30.3% year-over-year, to approximately 6.3 million students.  In the release, Defendant Yu stated that "[t]he strong top line performance was driven by the continued momentum of our K-12 after-school tutoring business."  Defendant Yu referred to the K¬12 after-school tutoring business as "[o]ur key growth driver," adding that "[w]e are confident about the overall market prospect, and well-placed to continue gaining market share over the long term."

40.     That same day, New Oriental held an earnings call with analysts and investors hosted by Defendant Yang.  During the call, Defendant Yang stated that the Company ended fiscal year 2018 "with sustained acceleration of our top line growth, as well as sustained enrollments," adding that "[t]he top line growth was driven by the continued momentum in our K-12 after-school tutoring business."  Defendant Yang called the Company's K-12 all-subjects after-school tutoring business "[o]ur key revenue driver."

41.     On August 22, 2018, the Chinese State Counsel issued an opinion on Supervising After-School Tutoring Institutions, known as "Circular 80," which provided further regulations targeting after-school tutoring institutions.  In addition to imposing certification requirements for after-school tutoring institutions, Circular 80 limited curriculum content, banned homework, set early class stopping times, and forbade tutoring companies from collecting more than three months' worth of fees.

42.     On September 27, 2018, New Oriental filed with the SEC on Form 20-F the Company's financial results for the fiscal year ended May 31, 2018, which was signed by Defendant Zhou and included signed certifications attesting to its accuracy by Defendants Zhou and Yang (the "2018 Form 20-F").  The 2018 Form 20-F stated that New Oriental's revenue growth had been primarily driven by its K-12 after-school tutoring courses, stating in pertinent part as follows:

> ***For the past several years, our revenue growth has been driven primarily by increased enrollments in our K-12 after-school tutoring courses and overseas test preparation courses and other programs and services***. The number of student enrollments for our courses is affected by the demand for our courses, the effectiveness of our marketing and brand promotion, the demographic composition of the cities where we have schools and learning centers, our ability to respond to competitive pressure, as well as seasonal factors. To further penetrate the K-12 after-school tutoring market, we have expanded the scope of our course offerings to cover non-English subjects, including through our New Oriental U-Can (Non-English) all subjects training program for middle and high school students and Pop Kids (Non-English) all subjects training program for primary school students, and plan to further expand our course offerings and geographic coverage in the future to capture a larger share of the huge after-school training market in China.

43.     On October 23, 2018, New Oriental issued a release announcing the Company's financial results for the first fiscal quarter of 2019 ended August 31, 2018.  The press release stated that the Company had achieved total net revenue of $859.8 million for the quarter, a 30.1% year-over-year increase.  The release also stated that during the quarter New Oriental's total student

enrollment in academic subject tutoring and test preparation courses had increased by 13.2% year-over-year, to approximately 1.7 million students.  In the release, Defendant Yu highlighted the robust growth of New Oriental's after-school tutoring business, calling the K-12 after-school tutoring business the Company's "key growth driver," which was purportedly delivering "strong growth" that had "achieved approximately 49% increase in revenue."  In the release, Defendant Zhou similarly highlighted the "strong growth" in the Company's after-school tutoring business, calling it the Company's "key growth driver."  Defendant Yang added that "[w]e are confident that our robust ecosystem integrating both offline and online education will deliver sustainable value for our customers and shareholders over the long term."

44.     That same day, New Oriental held an earnings call with analysts and investors hosted by Defendant Yang.  During the call, Defendant Yang characterized the new regulations and Chinese government focus on the tutoring sector as a positive development for the Company without "any material impact" due to New Oriental's purportedly "high-quality" and compliant educational services.  Defendant Yang also asserted that "[w]e believe ***the regulatory efforts will bolster a positive environment with improved market standards and enhance the teaching quality, supporting the healthy growth of the market in the long term***."  Defendant Yang added that "[a]s the leading education service provider in China, our company is ***fully supportive of this reforms, and we are committed to providing high-quality education service and doing our shares to build out a sustainable and robust market. At this stage, we do not foresee any material impact of the regulatory reform on our top line growth*** . . . ."

45.     On January 22, 2019, New Oriental issued a release announcing the Company's financial results for the second fiscal quarter of 2019 ended November 30, 2018.  The release stated that the Company had achieved total net revenue of $597.1 million for the quarter, a 27.8% year-

over-year increase.  The release also stated that during the quarter, New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 23.6% year-over-year, to approximately 2.3 million students.  In the release, Defendant Yu stated that they 'are pleased to see our overall business continue its strong momentum," which was "driven largely by our key business unit, K-12 all-subjects after-school tutoring."

46.     That same day, New Oriental held an earnings call with analysts and investors hosted by Defendant Yang.  During the call, Defendant Yang stated that New Oriental was continuing its "strong momentum" that was "largely driven by the remarkable year-on-year revenue growth . . . in our key business units, the K-12 all-subjects after-school tutoring business." In regard to the new Chinese government regulations, Defendant Yang stated that "*we are fully supportive of the government's reforms and in their implementations*" and that New Oriental was "*committed to doing our part in fostering the healthy growth market-healthy growth in the whole sector*."  Defendant Yang added that the "impact [of the regulations] is so far is in line with our expectations, and going forward, we expect the impact will be in line with our expectations." Defendant Yang continued, "we push all the teachers to pass the exams of the teacher license exam . . . . And *we're fully committed to our efforts to ensure all the teachers hold the qualifications as required*."

47.     On April 23, 2019, New Oriental issued a release announcing the Company's financial results for the third fiscal quarter of 2019 ended February 28, 2019.  The release stated that the Company had achieved total net revenue of $796.7 million for the quarter, a 28.9% year-over-year increase.  The release also stated that during the quarter New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 82.3% year-over-year, to approximately 1.6 million students.  Defendant Yu stated that New Oriental was

"pleased to see continued acceleration of growth momentum in the third quarter of fiscal year 2019." Defendant Yu referred to the K-12 after-school tutoring business as the Company's "key growth driver," and added that "[w]e are confident and well-placed to continue to expand our market share in the long term through our ceaseless efforts in improving teaching quality and enhancing learning experience for our students."

48. That same day, New Oriental held an earnings call with analysts and investors hosted by Defendant Yang. During the call, Defendant Yang stated that New Oriental was "very pleased to see continued acceleration of growth momentum in this quarter," which "was largely driven by the exceptional performance of our key business units, the k-12 all-subjects after-school tutoring." Defendant Yang also stated that "[w]e are confident and well-placed to continue expanding our market share over the long term through our ceaseless efforts in improving in teaching quality and enhancing learning experience for our customers."

49. On July 23, 2019, New Oriental issued a release announcing the Company's financial results for the fourth quarter and fiscal year ended May 31, 2019. The release stated that the Company had achieved total net revenue for the quarter of $842.9 million, a 20.2% year-over-year increase. The release also stated that during the quarter New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 33.9% year-over-year, to approximately 2.8 million students. For the fiscal year, the release stated that New Oriental had achieved total net revenue of $3.1 million, a 26.5% year-over-year increase. The release also stated that during the year New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 32.4% year-over-year, to approximately 8.4 million students. In the release, Defendant Yu stated that "[w]e are delighted to conclude the fiscal

year 2019 with continued robust growth on the top line," and referred to the K-12 after-school tutoring business as New Oriental's "key growth driver."

50.    That same day, New Oriental held an earnings call with analysts and investors hosted by Defendant Yang.  During the call, Defendant Yang stated that New Oriental was "***fully supportive of the government reforms and the implementations***," and did "***not foresee any material impacts from the regulations***."  Defendant Yang added that "***on the contrary, we fully support the regulations from the government because I think it's good for the whole industry***."

51.    On September 26, 2019, New Oriental filed with the SEC on Form 20-F the Company's financial results for the fiscal year ended May 31, 2019, which was signed by Defendant Zhou and included signed certifications attesting to its accuracy by Defendants Zhou and Yang (the "2019 Form 20-F").  The 2019 Form 20-F stated that New Oriental's revenue growth has been primarily driven by its K-12 after-school tutoring courses, stating in pertinent part as follows:

> ***For the past several years, our revenue growth has been driven primarily by increased enrollments in our K-12 after-school tutoring courses and overseas test preparation courses and other programs and services***. The number of student enrollments for our courses is affected by the demand for our courses, the effectiveness of our marketing and brand promotion, the demographic composition of the cities where we have schools and learning centers, our ability to respond to competitive pressure, as well as seasonal factors. To further penetrate the K-12 after-school tutoring market, we have expanded the scope of our course offerings to cover non-English subjects, including through our New Oriental U-Can (Non-English) all subjects training program for middle and high school students and Pop Kids (Non-English) all subjects training program for primary school students, and plan to further expand our course offerings and geographic coverage in the future to capture a larger share of the huge after-school training market in China.

52.    On October 22, 2019, New Oriental issued a release announcing the Company's financial results for the first fiscal quarter of 2020 ended August 31, 2019.  The release stated that the Company had achieved total net revenue of $1.1 million for the quarter, a 24.6% year-over-

year increase.  The release also stated that during the quarter New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 50.4% year-over-year, to approximately 2.6 million students.  In the release, Defendant Yu stated that New Oriental was "very pleased to start fiscal 2020 with robust top line growth."  In the release, Defendant Zhou similarly stated that "we once again delivered a highly successful summer promotion campaign, offering low-cost offline trial courses for multiple subjects," which had led to "an 8% increase year-over-year" in "total promotion enrollments."  Defendant Yang added that "we are confident in our ability to deliver consistent margin improvement and create sustainable long-term value to our customers and shareholders."

53.    That same day, New Oriental held an earnings call with analysts and investors hosted by Defendant Yang.  During the call, Defendant Yang stated that "[o]ur key growth driver, K-12 after-school tutoring business recorded significant increase in student enrollment." Defendant Yang also attributed "this quarter's outstanding performance" to "the overwhelming responses received from the summer promotion campaign."

54.    On January 20, 2020, New Oriental issued a release announcing the Company's financial results for the second fiscal quarter of 2020 ended November 30, 2019.  The release stated that the Company had achieved total net revenue of $785.2 million for the quarter, a 31.5% year-over-year increase.  The release also stated that during the quarter New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 63.3% year-over-year, to approximately 3.8 million students.  In the release, Defendant Yu stated that "[w]e are very pleased to report a set of solid financial results in the second fiscal quarter of this year," and noted that "[t]he K-12 after-school tutoring business continued its strong momentum."

55.    That same day, New Oriental held an earnings call with analysts and investors hosted by Defendant Yang.  During the call, Defendant Yang stated that the Company's net revenue "growth was mainly driven by increase in student enrollments in K-12 after school tutoring courses, which continued its strong momentum."  Defendant Yang described New Oriental's Koolearn subsidiary as "a very important platform for New Oriental" and stated that the Company was "optimistic about the opportunities in the online education market and confident in our investments into the platform."

56.    On April 21, 2020, New Oriental issued a release announcing the Company's financial results for the third fiscal quarter of 2020 ended February 29, 2020.  The release stated that the Company had achieved total net revenue of $923.2 million for the quarter, a 15.9% year-over-year increase.  The release also stated that during the quarter New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 2.3% year-over-year, to approximately 1.6 million students.  In the release, Defendant Yu stated that despite the impact of the COVID-19 pandemic, "we remain committed to ensuring the best learning experience and teaching quality to our customers during the challenging time."

57.    That same day, New Oriental held an earnings call with analysts and investors hosted by Defendant Yang.  During the call Defendant Yang stated that "growth was mainly driven by K-12 after school tutoring courses."  Defendant Yang added that "[m]ore resources are invested into executing new initiatives in online K-12 after-school tutoring business in fiscal year 2020" including "content development; teachers recruiting and training; sales, marketing, R&D and other necessary cost incentives to drive the growth of the new pure online programs."  Defendant Yang further described Koolearn's "large scale market promotion" whereby Koolearn "offer[ed] free

large size online live broadcasting classes to the public and attracted several times more traffic than normal times."

58.     On July 28, 2020, New Oriental issued a release announcing the Company's financial results for the fourth quarter and fiscal year of 2020 ended May 31, 2020.  The release stated that the Company had achieved total net revenue for the quarter of $798.5 million, a 5.3% year-over-year increase.  The release also stated that during the quarter New Oriental's total student enrollment in academic subject tutoring and test preparation courses had decreased by 6.2% year-over-year, to approximately 2.6 million students.  For the fiscal year, the release stated that the Company had achieved total net revenue of $3.6 million, a 15.6% year-over-year increase. The release also stated that during the year New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 26.3% year-over-year, to approximately 10.6 million students.  In the release, Defendant Yu acknowledged the pressure of the COVID-19 pandemic on New Oriental's business, but highlighted that Koolearn had "successfully contributed a significant increase in new customers."  Defendant Yu added that "[w]e are certain that with New Oriental's leading brand, superior education product and system and the best teaching resources, we will continue to capture more market share" and will "deliver long-term value for our shareholders."

59.     That same day, New Oriental held an earnings call with analysts and investors hosted by Defendant Yang.  During the call, Defendant Yang represented that the Company's summer promotion strategy had generated "outstanding results," and that the "sound and highly profitable strategy enable[d] us to capture and increase our market share in high-growth K-12 after-school tutoring market."  In addition, Defendant Yang detailed the new initiatives that New Oriental had utilized to further penetrate the online education market, stating that the Company

was "continu[ing] to plac[e] more resources in Koolearn" including "content development, teachers recruiting and training, sales and marketing, R&D and other necessary cost expenses to drive the growth of the new online programs."

60. On October 13, 2020, New Oriental issued a release announcing the Company's financial results for the third fiscal quarter of 2020 ended August 31, 2020.  The release stated that the Company had achieved total net revenue of $986.4 million for the quarter, an 8% year-over-year increase.  The release also stated that during the quarter New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 13.5% year-over-year, to approximately 3 million students.  In the release, Defendant Yu referred to New Oriental's K-12 all-subjects after-school tutoring business as its "key growth driver" and stated that "we are confident that our continued improved services and best-in-class learning experience would enable us to capture more market share and deliver long-term value for our shareholders."

61. That same day, New Oriental held an earnings call with analysts and investors hosted by Defendant Yang.  During the call, Defendant Yang pointed to "the highly successful summer promotion campaign" employed by the Company as "[a] key highlight in this quarter," adding that "[the] summer promotion strategy delivered outstanding results."  Defendant Yang also stated that Koolearn had successfully employed "large-scale market promotion" that had "attracted several times more traffic than normal," and established teaching training centers "to attract more qualified teachers and tutors."

62. By November 2020, the price of New Oriental ADSs surpassed $16 per ADS, having roughly tripled in price since the end of 2018.  With the price of New Oriental securities artificially inflated, the Company conducted a $1.3 billion global common stock offering (the "SPO").

63.     On November 3, 2020, New Oriental filed with the SEC a prospectus supplement to a registration statement on Form 424(B)(5) for the SPO (the "Registration Statement").  The Registration Statement stated that "[a]t the core of [New Oriental's] education ecosystem [is its] high quality teachers and systematic teacher selection, training and retention processes."  Further, the Registration Statement represented that the Company's "value proposition" provided students with "[a]ccess to high quality teachers," and the Registration Statement characterized one of New Oriental's competitive strengths as its "[s]ystematic approach to hiring and training high quality teachers."

64.     On January 22, 2021, New Oriental issued a release announcing the Company's financial results for the second fiscal quarter of 2021 ended November 30, 2020.  The release stated that the Company had achieved total net revenue of $887.7 million for the quarter, a 13.1% year-over-year increase.  The release also stated that during the quarter New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 10.4% year-over-year, to approximately 4.2 million students.  In the release, Defendant Yu again characterized the K-12 all-subjects after-school tutoring business as New Oriental's "key growth driver," with the segment achieving year-over-year revenue growth of 26% and student enrolment growth of 15%.  In the release, Defendant Yu similarly asserted that New Oriental was picking up momentum, stating in pertinent part as follows:

> Looking ahead, we believe our business are in good recovery progress and will gradually pick up the momentum in the coming quarters.  As one of the market leaders in China, we are confident that our exceptional products and services, as well as our constantly enhanced learning experience would enable us to capture more market share and deliver long-term value for our shareholders.

65.     That same day, New Oriental held an earnings call with analysts and investors hosted by Defendant Yang.  During the call, Defendant Yang stated that New Oriental had

achieved total net revenue of $887.7 million during its second fiscal quarter, "representing a 13.1% increase year-over-year."  Defendant Yang attributed the strong results to the Company's K-12 after-school tutoring business, which had achieved approximately 26% year-over-year revenue growth during the quarter.  Defendant Yang also hailed the "large-scale market promotion" employed by Koolearn, which had "offer[ed] free large online live broadcasting class" to increase traffic and established teaching training centers to attract more qualified teachers and tutors. Defendant Yang further asserted that "as a result of the improvements to operational teams as well as positive word of mouth promotion and brand loyalty, Koolearn will continue to quickly acquire new users, while enhancing the strand retention rate."  Later during the call, Defendant Yang stated that the Company's K-12 after-school tutoring business was on track "to grow in the range of 27% to 32% . . . [a]nd the growth of the koolearn.com pure online education platform is expected to accelerate, all year-over-year in dollar terms."  He summarized: "*I think the revenue growth will be booming*."

66.    Defendants' statements referenced in ¶¶ 37-40, 42-61, and 63-65 above were materially false and misleading when made because they misrepresented and failed to disclose adverse facts about New Oriental's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them, as follows: (i) that New Oriental's revenue and operational growth was the result of deceptive marketing tactics and abusive business practices that flouted Chinese regulations and policies and exposed the Company to an extreme risk that more draconian measures would be imposed on the Company; (ii) that New Oriental had engaged in misleading and fraudulent advertising practices, including the provision of false and misleading discount information designed to obfuscate the true cost of the Company's programs to its customers; (iii) that New Oriental had falsified teacher qualifications and experience in order to

attract customers and increase student enrollments; (iv) that New Oriental had defied prior government warnings against linking school enrollments with the provision of private tutoring services; (v) that, as a result of the foregoing, New Oriental was subject to an extreme undisclosed risk of adverse enforcement actions, regulatory fines and penalties, and the imposition of new rules and regulations adverse to the Company's business and interests; and (vi) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and lacked a reasonable factual basis.

67.    Additionally, as Defendants knew or recklessly disregarded, New Oriental's annual reports on Form 20-F misleadingly failed to include information required by SEC rules and regulations to be stated therein.  Specifically, Item 5 of Part I of Form 20-F, entitled "Operating and Financial Review and Prospects," requires an issuer to disclose "*management's assessment of factors and trends which are anticipated to have a material effect on the company's financial condition and results of operations in future periods*" (emphasis in original).  Furthermore, Item 5(D), entitled "Trend information," provides:

> The company must identify material recent trends in production, sales and inventory, the state of the order book and costs and selling prices since the latest financial year. ***The company also must discuss, for at least the current financial year, any known trends, uncertainties, demands, commitments or events that are reasonably likely to have a material effect on the company's net sales or revenues, income from continuing operations, profitability, liquidity or capital resources, or that would cause reported financial information not necessarily to be indicative of future operating results or financial condition.***

68.    The scope of the information required to be disclosed under this paragraph is coextensive with that required under Item 303(b)(2)(ii) of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii), which requires an issuer to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  Furthermore, the SEC has recognized

that "for Form 20-F annual reports, the existing MD&A-equivalent requirements for foreign private issuers currently mirror the substantive MD&A requirements for U.S. companies."

69.     The Form 20-F annual reports filed by New Oriental during the Class Period violated Item 303 by failing to disclose the adverse facts alleged in ¶ 66 above concerning the Company's wide-ranging misconduct and efforts to artificially inflate New Oriental's financial results through the illicit business tactics detailed herein.  These adverse facts and events created known trends and uncertainties that were reasonably likely to (and ultimately did) have a material adverse impact on the Company's financial condition and results of operations, and, accordingly, appropriate disclosure in the Form 20-F annual reports was required.

70.     Moreover, New Oriental's Form 20-F annual reports failed to disclose certain of the most material risks facing the Company at the time of filing, in violation of Item 105 of SEC Regulation S-K, 17 C.F.R. § 229.105.  Item 105 requires an issuer to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the registrant or offering speculative or risky."  Specifically, Item 105 requires a company to "[e]xplain how each risk affects the registrant or the securities being offered" and "each risk factor should be set forth under a subcaption that adequately describes the risk."  Likewise, Item 3 of Part I of Form 20-F requires a foreign private issuer, such as New Oriental, to "prominently disclose risk factors that are specific to the company or its industry and make an offering speculative or one of high risk."

71.     New Oriental's Form 20-F annual reports filed during the Class Period failed these reporting obligations because, as Defendants knew or recklessly disregarded, the reports failed to disclose the true risks arising from the adverse facts alleged in ¶ 66 above concerning the Company's wide-ranging misconduct and efforts to artificially inflate New Oriental's financial results through the illicit business tactics detailed herein.  The specific and extreme risks of adverse

regulatory action, as well as legal, reputational, and financial risks arising from these adverse facts, were not disclosed in the annual reports even though they were some of the most material factors that made an investment in New Oriental ADSs speculative or risky.

72.     Moreover, the purported "risk disclosures" contained in New Oriental's Form 20-F annual reports were themselves materially misleading.  For example, while the reports stated that New Oriental "may" be subject to adverse regulatory actions if the government found the Company was not in compliance with the existing regulatory regime, nowhere did the reports disclose that New Oriental was *already* and *knowingly* engaged in the wide-ranging misconduct and illicit business tactics detailed herein.  The Form 20-F annual reports also qualified their discussion of purported regulatory risks by claiming that New Oriental was taking actions to ensure compliance with the laws, regulations and policies applicable to its business, for example, by stating that New Oriental was "continuously making efforts to comply with the requirements under [Chinese] regulations and implementations," "ha[d] been making efforts to ensure compliance with applicable rules and regulations in all material respects," and endeavored to "ensure compliance with the PRC laws and regulations."  The failure to disclose the Company's actual business practices and New Oriental's efforts to knowingly flout Chinese rules, regulations, and policies rendered the discussion of purported "risks" relating to New Oriental's business contained in the annual reports themselves materially misleading.

**The Truth Begins to Emerge**

73.     From March 4, 2021 through March 11, 2021, China held its annual "Two Sessions" parliamentary meetings, where the two main political bodies of China meet, discuss, and reveal plans for China's policies involving the economy, military, trade, diplomacy, the environment, and more.  Defendant Yu, as a member of the National People's Congress, was a

delegate at the Two Sessions parliamentary meetings.  Defendant Yu actively participated in the meetings and regulatory discussions, reportedly failing to "defend the off-campus tutoring market" and instead suggesting "that China can use artificial intelligence to help English education in rural areas."

74.    Media reports stated that attendees had proposed "stricter regulations" to further rein in the online education industry, such as enhanced regulations aimed at enhancing teacher quality, limiting fee scams, reducing market "abuse" by large players like New Oriental, and reducing the stress that after-school tutoring placed on students in the Chinese educational system. For example, on March 8, 2021, the *China Daily* published an article titled "Political Advisers Discuss Regulations for Online Education," which stated in pertinent part as follows:

> *Political advisers have proposed stricter regulations for the extracurricular online education industry in China during the ongoing annual session of the Chinese People's Political Consultative Conference National Committee*.
>
> *These regulations are aimed at enhancing teaching quality and avoid hidden risks faced by customers*.
>
> * * *
>
> "However, the rapid surge in such short time has created several hidden risks," said Ma Jin, a member of the National Committee of the CPPCC and deputy chairman of the Shanghai municipal committee of China Zhi Gong Party.
>
> "*To seize the opportunity in the emerging market, a few huge companies have abused their dominant position in the sector, whereas small and medium-sized firms are lacking time and finances to grow*," he said.
>
> *In addition, many online education platforms require advance payment, which leads to risks of advance fee scams and customers encountering difficulties in getting refunds, he said.*
>
> * * *
>
> To tackle these problems, Ma said the government should formulate regulations for extracurricular online education, including standards for the establishment of education institutions, teaching environment and content.

"Online education platforms should display their teachers' qualifications to the public," he said.

With regard to financial risks, Ma suggested that around 30 percent of the company's reserve fund should be supervised by the government. Once financial risks emerge, the use of these funds should be restricted.

Furthermore, online education platform institutions should not charge more than three months worth of tuition fees at a time, and the fee should be used for only teaching related activities, instead of investment. A third-party payment platform could be used to supervise customer advance payments.

This sentiment was echoed by another political adviser Sima Hong, who is also the chairman of the Beijing Municipal Committee of the Democratic National Construction Association.

Sima advised education authorities to cooperate with banks to establish a supervision system for online education platforms to address the issue of potential misappropriation of advance payments.

"*Any legal person and major shareholders of institutions which illegally charge tuition fees before they disappear should be seriously punished*," she added.

Li Xin, chairman of the Guangdong Provincial Committee, associated the negative impact of substandard online education with children's eye health.

Data from the National Health Commission shows that 53.6 percent of children in China suffered from myopia in 2018.

"Services from some substandard online education platforms have increased students' burden of schoolwork these years," she said.

In her proposal, Li suggested online education institutions be prohibited from cooperation with schools or classes.

"*Schools and teachers should not recommend extracurricular online education platforms and products to parents and students or force students to take e-learning lessons*," she said.

"The length for a web-based course in senior high school should not exceed 30 minutes, while for junior high school students, it should be within 25 minutes, and within for 20 minutes primary school students, to ensure children's eye health," Li said.

"Efforts should also be made by local authorities to limit the students' e-learning time on extracurricular education platforms," she added.

75.     Similarly, on March 11, 2021, the *South China Morning Post* published an article titled "China two sessions: tightened regulation of 'chaotic' K-12 off-campus education market may spoil Big Tech's expansion plans."   The article described how an impending "regulatory storm" presented a headwind for after-school tutoring businesses in China such as New Oriental, although the article stated that these businesses were likely to be able to navigate the regulatory environment to continue their expansion plans, stating in pertinent part as follows:

> China's US$110 billion K-12 off-campus education market, which has struggled during the coronavirus pandemic, is now bracing for a regulatory storm amid comments expressed by the country's leaders, lawmakers and advisers in the "two sessions", the country's biggest annual political gathering.
>
> President Xi Jinping described the domestic market for K-12 – referring to kindergarten to 12th grade – after-school training services as a "social problem" in a meeting last week of the Chinese People's Political Consultative Conference (CPPCC).
>
> "It can't be solved by the education authority alone, and all social aspects and related departments should make joint efforts to study and solve it," Xi said in comments published by official media.
>
> * * *
>
> While it remains unclear exactly how regulations are going to be rolled out, the message from the National People's Congress (NPC), China's top legislature, indicated that off-campus training services are "chaotic" and create problems for the country's education sector. Typically, primary school pupils take extracurricular tutoring on top of their studies on campus to perform well in examinations.
>
> ***The prospects of tightened regulation could bring uncertainty to the market and the plans of Chinese Big Tech companies to expand operations in the education sector***. Tech unicorn ByteDance, owner of short video-sharing apps TikTok and Douyin, recently announced its intention to recruit some 13,000 new employees for its growing Dali education business.
>
> Big Tech's vast resources are expected to help them continue their expansion into education. "The internet giants won't give up their education initiatives," said Claudia Wang, a partner at management consulting firm Oliver Wyman, said on Thursday.

"Most of them have businesses in the education sector that are aligned with government initiatives to improve access to quality education via different channels. They are also equipped with strong capital to be compliant with government regulation."

*A number of big players in the market, including TAL Education Group and New Oriental Education & Technology Group, have become listed companies on the back of domestic demand*.

\* \* \*

Dozens of NPC and CPPCC delegates have been vocal about the need to strengthen spot inspections of K-12 off-campus education providers and punish those found guilty of false advertising. Zhu Yongxin, a CPPCC member, suggested that advertising by these providers should be curbed, while fellow delegate Chen Zhongyi suggested a permanent ban on all off-campus tutoring services.

76.     On March 31, 2021, China's Ministry of Education announced that education departments should limit the times at which primary and secondary school students take part in online learning to ensure they are getting enough sleep.

77.     As news of the government's focus on the after-school tutoring industry spread, the price of New Oriental ADSs began to drop from $18.24 when the market closed on March 5, 2021, to $14.50 by April 1, 2021, a nearly 21% decline.  However, the price of New Oriental ADSs remained artificially inflated because New Oriental's illicit business practices and the true nature of the Two Sessions parliamentary meetings and the draconian measures that would soon be announced adversely impacting the for-profit tutoring industry were not revealed to the market. In addition, Defendants continued to make materially false and misleading statements regarding New Oriental's business and operations and the impending impact of new governmental regulations on the for-profit tutoring industry following the Two Sessions meetings.

78.     For example, on April 20, 2021, New Oriental issued a release announcing the Company's financial results for the third fiscal quarter of 2021 ended February 28, 2021.  The release stated that the Company had achieved total net revenue of $1.2 million during the quarter,

a 29% year-over-year increase.  The release also stated that during the quarter New Oriental's total student enrollment in academic subject tutoring and test preparation courses had increased by 43% year-over-year, to approximately 2.3 million students.  The release stated that this growth had been "mainly driven by increases in student enrollments in K-12 after-school tutoring courses."  In the release, Defendant Yu stated that "we are confident that our exceptional products and services, as well as our constantly enhanced learning experience would enable us to gain market share and deliver long-term value for our shareholders."

79.     That same day, New Oriental held an earnings call with analysts and investors hosted by Defendant Yang.  During the call, Defendant Yang stated that New Oriental "saw strong momentum in recovery" and claimed the Company's robust financial results were "a very encouraging reflection, affirming the business strategy that we have taken during the difficult period."  Further, Defendant Yang stated that New Oriental's "key revenue driver, K-12 all-subjects after-school tutoring business, achieved year-over-year revenue growth of approximately 37% in dollar terms."

80.     Later during the call, Defendant Yang described the purported steps taken by Koolearn "[t]o capture the huge market opportunity in online education area," by investing "more resources in executing new initiatives in online K-12 after-school tutoring business since the second half of last fiscal year."  Defendant Yang expressed "great confidence" in New Oriental's business prospects despite the impending imposition of stricter regulations, in particular with respect to the Company's Koolearn subsidiary which was purportedly on track for "accelerat[ing]" growth.  Defendant Yang stated in pertinent part as follows:

> *[W]e have great confidence in the fundamentals of our business, which we believe will continue to remain strong . . . . and we remain optimistic of the brighter prospects of our business. We believe our investments now will bring us fruitful returns in the long run.*

Looking at the near term and our expectations for the next quarter, we expect total revenue to be in the range USD 1,101.9 million to USD 1,141.8 million, representing year-over-year increase in the range of 38% to 43%. To provide the breakdown of the expected top line growth for key business lines: *K-12 business is expected to be – to grow in the range of 45% to 50%*, overseas test prep program is expected to grow [in the range of 25% to 30%] (corrected by company after the call), overseas study – consulting and study tour business is expected to be flattish and *the growth of the koolearn.com pure online education platform is expected to accelerate*, all year-over-year in dollar terms.

81.     When asked during the call about the stricter regulations governing the for-profit tutoring industry reportedly under consideration by the Chinese government, Defendant Yang stated that "the government's intention to tighten the after-school tutoring business policy *is not a surprise to us* as it has been discussed for a long time since 2018."  However, Defendant Yang misrepresented the nature of the regulations and the expected impact on New Oriental's business, stating that "*we believe the regulator's efforts will foster a positive environment for the whole market*," and that New Oriental was "*aligned with government policy and also fully committed to work together with the government to build a better the education market in China*." Defendant Yang further reassured investors that the regulations would not have any "*material impact on our top line*," but rather allow the Company to "*further take more market share from the other players*."

82.     Defendants' statements referenced in ¶¶ 78-81 above were materially false and misleading when made because they misrepresented and failed to disclose adverse facts about New Oriental's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them, as follows: (i) that New Oriental's revenue and operational growth was the result of deceptive marketing tactics and abusive business practices that flouted Chinese regulations and policies and exposed the Company to an extreme risk that more draconian measures would be imposed on the Company; (ii) that New Oriental had engaged in misleading

and fraudulent advertising practices, including the provision of false and misleading discount information designed to obfuscate the true cost of the Company's programs to its customers; (iii) that New Oriental had falsified teacher qualifications and experience in order to increase student enrollments; (iv) that New Oriental had defied prior government warnings against linking school enrollments with the provision of private tutoring services; (v) that, as a result of the foregoing, New Oriental was subject to an extreme undisclosed risk of adverse enforcement actions, regulatory fines and penalties, and the imposition of new rules and regulations adverse to the Company's business and interests; (vi) that the new rules, regulations, and policies to be implemented by the Chinese government following the Two Sessions parliamentary meetings were far more severe than represented to investors by Defendants and in fact posed an existential threat to the Company and its business; and (vii) that as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and lacked a reasonable factual basis.

### The Truth Fully Emerges

83.    On April 25, 2021 – less than a week after Defendant Yang's representation that the new rules and regulations would be "positive" for New Oriental – media reports revealed that the City of Beijing had fined four online education agencies the maximum fine of 500,000 yuan (approximately $80,000) each for misleading customers with false advertising.  Violators included New Oriental subsidiary Koolearn.  Regulators stated that Koolearn had been misrepresenting the un-discounted costs of enrollment to consumers, thereby deceiving customers into paying full price for courses that they believed they were receiving at a discount.  For example, Koolearn promoted online courses as being offered at a 90% discount from the purported regular price however no courses had in fact ever been sold at this purported regular price.  Beijing authorities stated that

they were acting on serious concerns that had been raised by the general public regarding the Company's business practices.

84.     On May 12, 2021, news reports revealed that the impending government crackdown would be further reaching and more drastic than previously publicly known.  Sources stated that anticipated rules would include measures such as banning on-campus tutoring classes, the provision of tutoring services during weekend hours, and the imposition of industry-wide fee limitations.  For example, a *Reuters* article titled "China planning new crackdown on private tutoring sector," stated that regulators had taken adverse actions against for-profit tutoring companies, including ordering New Oriental advertising to be pulled in April 2021.  The article summarized the impending regulatory changes in pertinent part as follows:

> ***China is framing tough new rules to clamp down on a booming private tutoring industry***, aiming both to ease pressure on school children and boost the country's birth rate by lowering family living costs, sources told Reuters.
>
> The clampdown will also have the effect of cooling China's cutthroat tutoring market for kindergarten through to the 12th grade, or K-12 pupils, that has grown exponentially in recent years to around $120 billion.
>
> * * *
>
> The changes being drafted by the Ministry of Education and other authorities target before- and after-school K-12 tutoring, three people with knowledge of the matter told Reuters.
>
> One source said the draft rules could be unveiled as early as by end-June. All three sources requested anonymity as they were not authorised to speak publicly.
>
> ***Under the planned rules, on-campus academic tutoring classes will be banned, as will both on and off-campus tutoring during weekends, two of the people said. Regulators will also clamp down on off-campus tutoring, in particular for English and math, they added, restricting class times on weekdays***.
>
> * * *
>
> ***The new rules would seek to limit fees charged by companies for tutoring***, one of the sources told Reuters.

* * *

The planned rules would add to restrictions imposed in March, including a ban on live-streamed classes for minors after 9 p.m., a crackdown on advertising, and a ban on academic tutoring course offerings for pre-school kids.

* * *

*A source told Reuters that a large state broadcaster was told by regulators last month to remove TV commercials from two players, New Oriental Education & Technology Group and TAL Education Group . . . that they had placed earlier*.

85.     As a result of this news, the price of New Oriental ADSs dropped from $14.28 when the market closed on May 11, 2021, to $11.51 when the market closed on May 13, 2021, a nearly 20% decline over the two-day period.  However, New Oriental ADSs continued to trade at artificially inflated prices because investors and the market still did not know the full truth about New Oriental's illicit business practices or the severity of the impending regulatory crackdown these practices had caused.

86.     On June 1, 2021, Chinese regulators announced they had fined fifteen off-campus training institutions, including New Oriental, for illegal activities such as false advertising and fraud.  Among the violations were reportedly fabricating teacher qualifications, exaggerating the effects of training, and fabricating user reviews.  The regulators gave one example of a New Oriental teacher who was advertised as having three years teaching experience that in fact had only been teaching for five months.  Similarly, New Oriental had advertised another teacher as having six years of experience when in fact this teacher had only two years of teaching experience.  In total, New Oriental was accused of faking the teaching experience of 76 teachers, *a stunning 74% of all teachers surveyed*.  Notably, the survey was limited to the teachers on New Oriental's website that had been specifically highlighted for their prior teaching experience and accolades in a section titled "Famous Teachers."  The offending companies were hit with maximum penalties

for their illegal business practices, totaling a combined 36.5 million yuan ($5.73 million).  At a governmental conference announcing the fines, officials stated that the crackdown on the for-profit tutoring industry had grown out of the Two Sessions parliamentary meetings held earlier in the year and followed a deluge of complaints against bad industry actors, including **155,000** complaints and reports for education and training services received by authorities in 2020 and over **47,000** similar complaints and reports received by authorities in the first quarter of 2021.  Many of these complaints were against New Oriental, including a large number for problems related to difficulties in receiving appropriate refunds from the Company.

87.     In addition to the issues outlined above, New Oriental allegedly: (i) provided false pricing information, including by stating that courses were being offered at a 90% discount when in fact the purported regular rate was never offered; (ii) provided fraudulent teacher certifications and other falsified credentials to prospective students; (iii) engaged in false publicity and price fraud; and (iv) failed to honor its contractual commitment to students.

88.     As a result of this news, the price of New Oriental ADSs dropped from $11.09 when the market closed on June 1, 2021, to $9.32 when the market closed on June 3, 2021, a 16% decline over the two-day period.

89.     Then, on July 23, 2021, China unveiled a sweeping overhaul of its education sector, banning companies that teach the school curriculum from making profits, raising capital, or going public.  This drastic measure effectively ended any potential growth in the for-profit tutoring sector in China.  As a *Reuters* report titled "China bars for-profit tutoring in core school subjects" summarized, the "move threatens to decimate China's $120 billion private tutoring industry and triggered a heavy selloff in shares of tutoring firms traded in Hong Kong and New York including New Oriental Education & Technology Group and Koolearn Technology Holding Ltd."

90.     On July 25, 2021, New Oriental published an "update" on the new regulations, which stated that the Company "will follow the spirit of the Opinion and comply with relevant rules and regulations when providing educational services" and "expects such measures to have material adverse impact on its after-school tutoring services related to academic subjects in China's compulsory education system."

91.     As a result of this news, the price of New Oriental ADSs plummeted from $6.40 when the market closed on July 22, 2021 to just $1.94 by market close on July 26, 2021, a nearly 70% decline.  This represented a ***greater than 90% decline*** in just five months from the February 16, 2021 Class Period high of $19.97 for New Oriental ADSs.

**<u>Post-Class Period Disclosures</u>**

92.     On August 1, 2021, New Oriental announced that it was cancelling the Company's planned earnings release for the fourth quarter of fiscal year 2021.

93.     On August 18, 2021, New Oriental published a comment on new regulations issued by the Beijing municipal government focused on after-school tutoring providers.  The Company stated that "compliance with these measures will have a material adverse impact on its existing Academic AST business, results of operations and financial condition."  New Oriental further stated that the "Company has stopped offering Academic AST classes over weekends, national holidays and the current school break period in Beijing," which had historically "accounted for the majority of the Company's revenues from its Academic AST business."

94.     On November 14, 2021, New Oriental announced that it would cease offering tutoring services related to academic subjects to students from kindergarten through grade nine across all learning centers in China by the end of 2021.  The Company stated that the cessation of these activities would have a "substantial adverse impact on our revenues for the fiscal year ending

May 31, 2022 and subsequent periods" given that such revenues "accounted for approximately 50% to 60% of our group's total revenues for each fiscal year."

95.    On January 10, 2022, media reports stated that Defendant Yu had revealed in a WeChat post that New Oriental had fired 60,000 employees following the government crackdown and suffered a 90% market value decline and 80% revenue drop.  In addition, Yu reportedly wrote that New Oriental had paid nearly 20 billion yuan (US$3.1 billion) for tuition refunds, employee dismissals, as well as teaching site lease cancellations.

96.    On January 24, 2022, New Oriental issued a "profit warning" which stated that, as a result of the adverse consequences of the Chinese government crackdown, the Company would record a net loss of between $800 million and $900 million for the six months ended November 30, 2021, compared to a profit of $228.6 million for the comparable period in the prior year.

97.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of New Oriental ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

98.    Plaintiff brings this action as a class action on behalf of a class consisting of all persons who purchased New Oriental ADSs during the Class Period (the "Class").  Excluded from the Class are Defendants and their families, the officers, directors, and affiliates of the Defendants, at all relevant times, and members of their immediate families, and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

99.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, New Oriental ADSs were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can

only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by New Oriental or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

100.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

101.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

102.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether Defendants' statements or omissions during the Class Period were materially false and misleading;

- whether Defendants acted with scienter in issuing materially false and misleading statements during the Class Period; and

- the extent of injuries sustained by the members of the Class and the appropriate measure of damages.

103.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

104.    At all relevant times, the market for New Oriental ADSs was an efficient market for the following reasons, among others:

- New Oriental ADSs met the requirements for listing and were listed and actively traded on the NYSE, a highly efficient, national stock market;

- as a regulated issuer, New Oriental filed periodic public reports with the SEC;

- New Oriental regularly communicated with public investors via established market communication mechanisms, including the regular dissemination of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- New Oriental was followed by securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

105.    As a result of the foregoing, the market for New Oriental ADSs promptly digested current information regarding New Oriental from all publicly available sources and reflected such information in the price of the Company's ADSs.  Under these circumstances, all purchasers of New Oriental ADSs during the Class Period suffered similar injury through their purchases of New Oriental ADSs at artificially inflated prices and a presumption of reliance applies.

106.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects – information that Defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the

importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

<u>**ADDITIONAL SCIENTER ALLEGATIONS**</u>

107.    As alleged herein, Defendants acted with scienter in that Defendants knew, or recklessly disregarded, that the public documents and statements they issued and disseminated to the investing public in the name of the Company, or in their own name, during the Class Period were materially false and misleading.  Defendants knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements and documents as primary violations of the federal securities laws.  Defendants, by virtue of their receipt of information reflecting the true facts regarding New Oriental, and their control over and/or receipt and/or modification of New Oriental's allegedly materially misleading misstatements, were active and culpable participants in the fraudulent scheme alleged herein.

108.    Defendants knew and/or recklessly disregarded the false and misleading nature of the information they caused to be disseminated to the investing public.  The fraudulent scheme described herein could not have been perpetrated during the Class Period without the knowledge and complicity of, or at least the reckless disregard by, personnel at the highest levels of the Company, including the Individual Defendants.

109.    The Individual Defendants, because of their positions with New Oriental, controlled the contents of New Oriental's public statements during the Class Period.  The Individual Defendants were each provided with or had access to the information alleged herein to be false and/or misleading prior to or shortly after its issuance and had the ability and opportunity to prevent its issuance or cause it to be corrected.  Because of their positions and access to material non-public information, the Individual Defendants knew or recklessly disregarded that the adverse

facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading.  Indeed, the Individual Defendants held themselves out as the persons most knowledgeable about New Oriental's business practices and the effect of Chinese laws, regulations, and government prerogatives.  As a result, each of the Defendants is responsible for the accuracy of New Oriental's corporate statements and is, therefore, responsible, and liable for the representations contained therein.

110.   Further, New Oriental founder and Chairman Defendant Yu had unique access to government planning as a member of the National People's Congress and vice chairman of the Committee of Education of the Central Committee of the China Democratic League.  Defendant Yu was an active participant at these meetings where restrictions on the online education industry were discussed and the draconian recommendations proposed therein later implemented. Defendant Yu also continued to hold himself out as a person with inside knowledge about the regulatory changes, for example speaking about the need for reform in the Chinese tutoring industry at China's National Young Entrepreneurs Summit held on May 30, 2021.

111.   Defendants also had the motive and opportunity to commit fraud.  In addition to the Individual Defendants' pay and compensation, in November 2020 Defendants sold over 8.5 million New Oriental common shares at artificially inflated prices, generating over $1.3 billion in gross proceeds.

## LOSS CAUSATION

112.   During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of New Oriental ADSs and operated as a fraud or deceit on Class Period purchasers of New Oriental shares by failing to

disclose and misrepresenting the adverse facts detailed herein. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of New Oriental ADSs declined significantly as the prior artificial inflation came out of the price of the ADSs.

113. As a result of their purchases of New Oriental ADSs during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws. Defendants' false and misleading statements had the intended effect and caused New Oriental ADSs to trade at artificially inflated levels throughout the Class Period, trading as high as $19.97 per share on February 16, 2021.

114. By concealing from investors the adverse facts detailed herein, Defendants presented a misleading picture of New Oriental's business, risks, and future financial prospects. When the full truth about the Company was revealed to the market, the price of New Oriental ADSs fell significantly, dropping to below $2 per share by July 26, 2021, removing the inflation therefrom and causing economic loss to investors who had purchased New Oriental ADSs during the Class Period.

115. The decline in the price of New Oriental ADSs after the corrective disclosures came to light was a direct result of the nature and extent of Defendants' fraudulent misrepresentations being revealed to investors and the market. The timing and magnitude of the price decline in New Oriental ADSs negates any inference that the losses suffered by Plaintiff and the other Class members were caused by changed market conditions, macroeconomic or industry factors, or Company-specific facts unrelated to Defendants' fraudulent conduct.

116. The economic loss, *i.e.*, damages, suffered by Plaintiff and the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of New Oriental

ADSs and the subsequent significant declines in the value of New Oriental ADSs when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## NO SAFE HARBOR

117.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pled in this complaint.  Many of the specific statements pled herein were not identified as "forward-looking statements" when made.   To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pled herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false and/or the forward-looking statement was authorized and/or approved by an executive officer of New Oriental who knew that those statements were false when made.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

118.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

119.    During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

120.    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they:

(a)    employed devices, schemes, and artifices to defraud;

(b)    made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of New Oriental ADSs during the Class Period.

121.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for New Oriental ADSs.  Plaintiff and the Class would not have purchased New Oriental ADSs at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by Defendants' misleading statements.

122.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of New Oriental ADSs during the Class Period.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against All Defendants)**

123.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

124.    The Individual Defendants acted as controlling persons of New Oriental within the meaning of Section 20(a) of the Exchange Act.  By reason of their positions with the Company,

and their ownership of New Oriental shares, the Individual Defendants had the power and authority to cause New Oriental to engage in the wrongful conduct complained of herein.  New Oriental controlled the Individual Defendants and all of its employees.  By reason of such conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Designating Plaintiff as Lead Plaintiff and declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Awarding such equitable or injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  March 4, 2022                              Respectfully submitted,

                                                   POMERANTZ LLP

                                                   */s/ Jeremy A. Lieberman*
                                                   Jeremy A. Lieberman
                                                   J. Alexander Hood II
                                                   James M. LoPiano

600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I, ANDRES MIJARES-ORTEGA, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint against New Oriental Education & Technology Group Inc. ("New Oriental" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire New Oriental American Depository Shares ("ADSs") at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired New Oriental ADSs during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    The attached sheet lists all of my transactions in New Oriental ADSs during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.



8.      I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed _February 14, 2022
            (Date)

_____
            (Signature)

ANDRES MIJARES-ORTEGA
(Type or Print Name)

**New Oriental Education & Technology Group Inc. (EDU)**                              **Mijares-Ortega, Andres**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 6/25/2021 | 200 | $8.2300 |
| Purchase | 6/25/2021 | 100 | $8.1500 |
| Purchase | 6/28/2021 | 100 | $8.3800 |
| Purchase | 6/28/2021 | 200 | $8.2900 |
| Purchase | 6/28/2021 | 50 | $8.4600 |
| Purchase | 6/28/2021 | 160 | $8.3600 |
| Purchase | 6/28/2021 | 100 | $8.4200 |
| Purchase | 6/28/2021 | 50 | $8.4800 |
| Purchase | 6/28/2021 | 140 | $8.2200 |
| Purchase | 6/29/2021 | 50 | $8.3700 |
| Purchase | 7/2/2021 | 200 | $7.6000 |
| Purchase | 7/2/2021 | 100 | $7.5900 |
| Purchase | 7/2/2021 | 30 | $7.5800 |
| Purchase | 7/2/2021 | 150 | $7.6000 |
| Purchase | 7/2/2021 | 100 | $7.5700 |
| Purchase | 7/2/2021 | 50 | $7.5700 |
| Purchase | 7/2/2021 | 50 | $7.5700 |
| Purchase | 7/2/2021 | 10 | $7.5700 |
| Purchase | 7/2/2021 | 10 | $7.5700 |
| Purchase | 7/2/2021 | 10 | $7.5600 |
| Purchase | 7/2/2021 | 100 | $7.5700 |
| Purchase | 7/2/2021 | 10 | $7.5600 |
| Sale | 6/25/2021 | (300) | $8.2600 |